UNITED STATES (EAKEN v.). See Case No. 4,235.

---

## Case No. 15,018.

UNITED STATES v. EARHART et al.

[4 Sawy. 245; [1] 1 Pac. Law Rep. 257; 9 Chi. Leg. News, 304.]

Circuit Court, D. Oregon. May 7, 1877.

PUBLIC OFFICER — MISAPPROPRIATION OF FUNDS— PRESUMPTIONS—ACTION UPON BOND—SURETY.

H. was appointed superintendent of Indian affairs to succeed himself, and at the date of the execution of his second bond there was a balance due the United States of the moneys received by him under his first bond. Held, that there could be no presumption that this sum had been illegally appropriated by the officer, but that such must be proved by the party claiming or alleging it; and that in the absence of such proof, the presumption is that this balance was then in the hands of the officer, to be applied and accounted for under his second bond.

[Cited in Board of Sup'rs v. Pabst, 70 Wis. 367, 35 N. W. 337.]

Action [by United States against R. P. Earhart, administrator, and others] on bond of superintendent of Indian affairs.

Rufus Mallory, for the United States.

Walter W. Thayer and William H. Effinger, for defendants.

DEADY, District Judge. This action is brought against the administrator and sure-

ties of the late J. W. Perit Huntington, superintendent of Indian affairs for Oregon, to recover the sum of $22,966.65, as and for moneys received by him as said superintendent, between March 28, 1863, and January 8, 1868, and not accounted for, with interest thereon.

By the stipulation of the parties it was tried by the court without the intervention of a jury. From the pleadings and the evidence the facts appear to be as follows:

(1) On March 28, 1863, Huntington, having been appointed superintendent of Indian affairs, gave bond to the United States, in the sum of $100,000, with the defendants Long, Heatherly, Coffin, Griswold and Miller as sureties, conditioned for "the careful discharge" of his official duties, and that he would "faithfully expend all public moneys and honestly account for the same," which might come into his hands, without fraud or delay; and on January 8, 1868, said Huntington, having been re-appointed as such superintendent, gave a second official bond to the United States with other persons as sureties.

(2) On September 11, 1867, the acting commissioner of Indian affairs, C. E. Mix, wrote Huntington an official letter, advising him of his re-appointment, which, among other directions, contained the following: "You are required to make out and forward here your accounts up to the date of your new bond, and in doing so transfer in due form to yourself all public moneys and property on hand belonging to the superintendency, the same to be accounted for under your new bond."

(3) On January 8, 1868, Huntington, in obedience to the foregoing direction, stated and returned an account current between himself and the United States for the "fractional part of month ending January 8, 1868," which he certified "embraced all public moneys received by him and not heretofore accounted for," and from which it appeared that of the various appropriations for the Indian service in his superintendency he had "on hand from last month" the aggregate sum of $34,607.90, and that there was due Huntington, for moneys expended by him in excess of the appropriations for "general and incidental expenses," and "for treaty stipulations with the Klamaths and Modocs," the sum of $11,600, making the balance due the United States $23,007.90.

(4) Upon the statement of differences made in the final settlement of Huntington's accounts under his bond of March 28, 1863, in the office of the second auditor on November 20, 1875, it was ascertained and determined that on account of errors in calculation and otherwise the amount thus reported to be due the United States should be reduced by the sum of $41.25, leaving the net balance due the United States on January 8, 1868, $22,966.65.

(5) On June 3, 1869, Huntington died, and on June 16 the defendant Earhart was duly

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

appointed administrator of his estate, and is still such administrator; and on January 19, 1876, said account was duly presented to said Earhart for allowance, and by him rejected.

The only evidence received or offered upon the trial was the transcript of the treasury books and proceedings concerning the accounts under the first bond, together with certified copies of said bond, Huntington's return of January 8, 1868, and the letters from the acting commissioner of Indian affairs, and therefore it does not appear whether the above mentioned balance was carried forward into the superintendent's accounts under the second bond, and there charged to himself, or not.

Upon these facts it is claimed by counsel for the United States that it appears Huntington was a defaulter for the sum admitted by him and found by the accounting officers of the treasury to be in his hands on January 8, 1868, and as such default occurred during the period covered by the first bond, the sureties therein are liable as well as the principal. The argument is, that there being no direct evidence upon the question whether or not Huntington carried this balance forward into his accounts under the second bond, the presumption is that he did not, and therefore he failed to account for it. But it is admitted that if it appeared that such balance had been so carried forward, it could not be said that there was a default unless the plaintiff showed further that, as a matter of fact, the money was not on hand as reported by Huntington.

But in my judgment it is immaterial, so far as this case is concerned, whether Huntington carried this balance into his accounts under the second bond or not. If on January 8, 1868, the date of the execution of said bond, he had the money on hand, the sureties therein became bound for his future conduct concerning it. It was then money received by him under his second appointment and bond, and to be accounted for accordingly, just as if it had then first come to his hands from the treasury. The liability of the sureties in the first bond then ceased, and they cannot be charged with the consequences of any subsequent misconduct or neglect of Huntington's concerning moneys then in his hands.

The evidence introduced by the government consists of the transcript of the treasury books and proceedings and the statement of Huntington. According to the latter, this balance was then "on hand." Upon this point it is explicit. The government having introduced this statement, is bound by it until it is shown to be false or incorrect. Nor do the accounts and proceedings in the treasury show anything to the contrary. According to them, the money constituting the balance had been received by Huntington from the United States during the period covered by the first bond, and on January 8, 1868, was due the United States—that is, so far as appeared, remained in his hands unexpended, and to be disposed of as provided by law and directed by the department of the interior. In this case the superintendent was directed by his superior to turn over the amount to himself as his own successor. Whether he did so or not does not appear. Probably, according to the familiar rule, that official duty is presumed to have been done, it ought to be assumed that he did, until the contrary appears. But this is altogether immaterial. For aught that would appear the turning over to himself, if done at all, might have consisted of a mere naked entry upon the books of the superintendency without the money being actually on hand. As a business transaction he should have been required to deposit the money with a United States depositary and return the certificate as a voucher to the department, and afterwards have received back the amount under his second bond.

However, the simple question here is, was the money "on hand" when the second bond was given and the liability of the sureties in the first terminated.

The government, in effect, alleges that it was not, and that there was a default to this amount. The defendants deny the allegation. The burden of proof is upon the party making the allegation. Now, so far from the evidence introduced by the government tending to prove that the balance sued for was not on hand when the second bond was given, it rather proves that it was. Before it can be said upon this evidence that Huntington was a defaulter on January 8, 1868, it must be presumed that the unexpended balance, which appears to have been, and should have been, in his hands at that time, had in fact been misapplied or appropriated to his own use. This fact, if it be a fact, the government might prove. But there is no presumption in any case that an officer has violated his duty or misappropriated funds intrusted to his care, but the contrary. In the case of two bonds given by a public officer for his conduct during two successive terms of the same office, the government is not entitled to recover of the sureties in the first bond any balance which appears from the accounts to have remained undisbursed in his hands at the expiration of the first term, unless it is satisfactorily proven that in fact such balance was not on hand, but had in some way been misappropriated. This has not been done or attempted in this case.

The case of Bruce v. U. S., 17 How. [58 U. S.] 437, appears to be in point, and decisive of the question. Bruce had held the office of Indian agent for two terms, from 1840 to 1848. The action was brought against him and his sureties in the second bond, and the breach assigned was that at the close of the second term there was a balance in his hands which he refused to turn over to the United States when required. One of the defenses was that the balance had accrued, or the default occurred, under the first bond, and,

therefore, the parties to the second bond were not liable. The court below instructed the jury: "That if, when Bruce was re-appointed agent, in 1844, he had moneys in his hands of the United States which he received as agent under his previous commission, then he was bound to apply and account for such moneys under the second commission, and his sureties are bound under the bond which is sued on. But if Bruce had appropriated the moneys received under the previous commission to his own use, when this bond was given, then the first set of sureties are responsible for the moneys thus illegally appropriated, and the defendants are not liable, and the burden of proof is on the defendants to show that Bruce had illegally appropriated the money before the bond sued on was given."

On error to the supreme court, this ruling was affirmed, Taney, C. J., saying: "When Bruce received his second commission, if any money or property which he received in his former term of office still remained in his hands, he was bound to apply and account for it under the appointment he then received;" and again: "Undoubtedly, the sureties in the second term of office are not responsible for a default committed in his first. But if any part of the balance now claimed from him was misapplied during that period, it was incumbent on the plaintiffs in error to prove it. No officer, without proof, will be presumed to have violated his duty; and if Bruce had done so, Steele had a right, under the opinion of the circuit court, to show it, and exonerate himself to that amount; but it could not be presumed merely because there appears, by the accounts, to have been a balance in his hands at the expiration of his first term."

Here, the government asks the court to presume that the moneys which appear by the accounts to have been in Huntington's hands at the close of his first term of office, had in fact been illegally appropriated by him before that time. This, the supreme court say, cannot be done, and the reason is apparent. Such a presumption, instead of being founded on fact, would be against evidence, besides being contrary to the well established rule that official duty is presumed to have been duly performed.

There must be a finding of fact and law for the defendants.